

**SIGNED this 18 day of March, 2025.**

_Robert M. Matson_
_____
**Robert M. Matson**
**United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-50365-RMM |
| Joseph M. Willman, Jr., and | ) | |
| Jamie B. O'Hara | ) | |
| | ) | |
| Debtors | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| Walter W. Kelley, Trustee | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Adv. Proc. No. 21-05012-RMM |
| vs. | ) | |
| | ) | |
| Michael Dale Wilson | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment [Doc. 41] ("Motion")

filed by plaintiff and Chapter 7 trustee Walter Kelley ("Trustee"), the Trustee's Brief

in Support of Plaintiff's Motion for Summary Judgment [Doc. 42] ("Trustee's Brief"),

and Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment [Doc. 53] ("Defendant's Brief"). This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the U.S. District Court for the Middle District of Georgia's Amended Standing Order of Reference, General Order 2012-1 (Feb. 21, 2012). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), (O).[1]

## I.    Introduction

The Trustee filed this adversary proceeding on August 20, 2021, seeking to avoid debtor Joseph M. Willman, Jr.'s transfer of real property located at 103 Wrights Mill Circle Warner Robins, Georgia, to the defendant Michael Dale Wilson. The Trustee's Amended Complaint [Doc. 23] asserts five bases for avoidance: (1) the transfer is avoidable under § 544(a)(3) as a transfer voidable under state law by a bona fide purchaser of the real property; (2) the transfer is avoidable under § 547(b) as a preference; (3) the transfer is avoidable under § 549(a) as an unauthorized post-petition transfer of estate property; (4) the transfer is avoidable under § 548(a)(1)(A) as well as § 544(b) and state law as having been made with actual intent to hinder, delay, or defraud creditors; and (5) the transfer is avoidable under § 548(a)(1)(B) as well as § 544(b) and state law as being constructively fraudulent.

The Trustee now seeks summary judgment on three of these claims for avoidance. He seeks summary judgment on the claim asserting actual intent to

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Federal Rule" references are to the Federal Rules of Civil Procedure.

hinder, delay, or defraud under § 548(a)(1)(A) as well as § 544(b) and state law; the claim asserting an unauthorized post-petition transfer of estate property under § 549(a); and the claim asserting a preferential transfer under § 547.

For the reasons given below, the Court will deny the Motion.

## II.    Summary Judgment Standard

Motions for summary judgment are governed by Federal Rule 56, made applicable in adversary proceedings by Bankruptcy Rule 7056. The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"To prevent summary judgment, a factual dispute must be both material and genuine." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). As to materiality, "[t]he substantive law applicable to the case determines which facts are material." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] dispute is 'genuine' only if a reasonable jury could return a verdict for the non-moving party." *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022).

"In determining whether to grant summary judgment, the district court must remember that '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

judge.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Liberty Lobby,* 477 U.S. at 255). As such, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255.

"The movant bears the initial burden to show from the record the absence of a genuine dispute as to material facts." *Nationstar Mortg., LLC v. Williams (In re Williams)*, 643 B.R. 369, 376 (Bankr. M.D. Ga. 2022) (Carter, J.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has met its burden, the burden shifts to the nonmovant to 'go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists.'" *Id.* (quoting *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006)).

## III.  Facts

### A.  Trustee's Statement of Uncontested Facts

The Trustee filed a Statement of Uncontested Facts [Doc. 43] ("Trustee's Fact Statement") setting forth 65 facts he contends are both material and uncontested. The Defendant filed a Response to Statement of Uncontested Facts [Doc. 52] ("Defendant's Response") admitting that all but one of the facts in the Trustee's Fact Statement are uncontested. As such, the following facts are from Trustee's Fact Statement.

On August 8, 2013, Debtor Jamie B. O'Hara ("O'Hara") signed an Executor's Deed as Executor of the Probate Estate of Dorothy P. Moore which conveyed a fee simple interest in 103 Wrights Mill Circle, Warner Robins, Houston County, Georgia

("Wrights Mill") to Debtor Joseph M. Willman, Jr. ("Willman").[2] The Executor's Deed

was recorded October 21, 2013, in Houston County Deed Book 6405, pages 237–38.[3]

The PT-61 form recorded in the Houston County Clerk's Office with the Executor's

Deed to Willman states the estimated fair market value of Wrights Mill was $35,000.[4]

On April 23, 2014, the Probate Division of the Court of Common Pleas of

Columbiana County, Ohio, entered a judgment in favor of Kelly Townsend

("Townsend") as Executrix of the Estate of John C. O'Hara against Willman and

O'Hara in case No. 2013ES00038 in the amount of $125,940 ("Probate Court

Judgment").[5] Townsend filed Proof of Claim No. 1 in the Debtors' bankruptcy case.[6]

Willman and O'Hara have never paid Townsend for or on account of the Probate

Court Judgment.[7] On November 13, 2018, Townsend was owed the full amount of the

Probate Court Judgment plus accrued interest.[8]

On November 13, 2018, Townsend filed a "Complaint for Recognition and

Enforcement of Judgement" against O'Hara and Willman in Twiggs County, Georgia

Superior Court Case No. 2018-V-121 to domesticate the Probate Court Judgment in

Georgia ("Domestication Complaint").[9] The Domestication Complaint stated in

paragraph 6 that Townsend "seeks enforcement of [the] judgment against assets of

---

[2] Trustee's Fact Statement ¶ 1 [Doc. 43]; Defendant's Response ¶ 1. A copy of the Executor's Deed is attached to Trustee's Fact Statement as Exhibit A.
[3] Trustee's Fact Statement ¶ 2; Defendant's Response ¶ 2.
[4] Trustee's Fact Statement ¶ 3; Defendant's Response ¶ 3. A copy of this PT-61 form is attached to Trustee's Fact Statement as Exhibit B.
[5] Trustee's Fact Statement ¶ 4; Defendant's Response ¶ 4.
[6] Trustee's Fact Statement ¶ 5; Defendant's Response ¶ 5.
[7] Trustee's Fact Statement ¶ 6; Defendant's Response ¶ 6.
[8] Trustee's Fact Statement ¶ 7; Defendant's Response ¶ 7.
[9] Trustee's Fact Statement ¶ 8; Defendant's Response ¶ 8. A copy of the Domestication Complaint is attached to Trustee's Fact Statement as Exhibit C.

the Defendant Joseph Willman, Jr. located in the State of Georgia."[10] On November

26, 2018, a Twiggs County Sheriff's Deputy personally served Willman with the

Domestication Complaint with a summons in Case No. 2018-V-121.[11]

On November 27, 2018, Willman signed a Quitclaim Deed to transfer Wrights

Mill to Michael Dale Wilson.[12] Wilson is Willman's uncle.[13] On November 27, 2018,

Wrights Mill was not subject to a security deed, debt, or lien.[14]

The Houston County Tax Commissioner determined the fair market value of

Wrights Mill in 2017, 2018, 2019, and 2020 was $43,200.[15] The Houston County Tax

Commissioner determined the fair market value of Wrights Mill for years 2021

through 2024 was as follows: $56,900 in 2021; $62,400 in 2022; $69,200 in 2023 and

$85,100 in 2024.[16]

On July 25, 2019, the Twiggs County Superior Court signed the order in Case

No. 2018-V-121 stating Townsend may "enforce the Ohio judgment pursuant to

O.C.G.A. § 9-12-130, and the Plaintiff do have and recover from the Defendants the

---

[10] Trustee's Fact Statement ¶ 9; Defendant's Response ¶ 9.

[11] Trustee's Fact Statement ¶ 10; Defendant's Response ¶ 10. A copy of this summons is attached to Trustee's Fact Statement as Exhibit D.

[12] Trustee's Fact Statement ¶ 11; Defendant's Response ¶ 11. A copy of this Quitclaim Deed is attached to Trustee's Fact Statement as Exhibit E.

[13] Trustee's Fact Statement ¶ 12; Defendant's Response ¶ 12.

[14] Trustee's Fact Statement ¶ 13; Defendant's Response ¶ 13.

[15] Trustee's Fact Statement ¶ 14; Defendant's Response ¶ 14. Copies of the Houston County Tax Commissioner's Property Tax Statements for these are attached to the Trustee's Fact Statement as Exhibit F.

[16] Trustee's Fact Statement ¶ 15; Defendant's Response ¶ 15. Copies of the Houston County Tax Commissioner's Property Tax Statements for these are attached to the Trustee's Fact Statement as Exhibit G.

sum of $125,940.00, together with interest therein at the judgment rate, and costs of this action."[17]

Willman and O'Hara ("Debtors") filed a voluntary chapter 7 petition on February 24, 2020 ("Petition Date").[18] On the Petition Date, Willman was the sole record title owner of Wrights Mill.[19]

The Trustee asserts, as uncontested, that Wrights Mill was not subject to a security deed, debt, or lien on the Petition Date. Defendant disputes this fact, stating Wrights Mill was subject to beneficial ownership in Defendant and an obligation to convey title to Defendant per an enforceable sales contract.[20]

Schedule A of the petition states that the Debtors jointly own "58.2 acres in Twiggs County."[21] On the Petition Date, O'Hara was the only record title owner of the Twiggs County real estate listed on Schedule A, and that real estate consisted of a 25-acre tract O'Hara took title to on February 25, 2010, and a 29.88-acre tract O'Hara took title to on January 1, 2012. Willman had never owned the real estate shown on Schedule A.[22]

---

[17] Trustee's Fact Statement ¶ 16; Defendant's Response ¶ 16. A copy of this order is attached to the Trustee's Fact Statement as Exhibit H.

[18] Trustee's Fact Statement ¶ 17; Defendant's Response ¶ 17.

[19] Trustee's Fact Statement ¶ 18; Defendant's Response ¶ 18.

[20] Trustee's Fact Statement ¶ 19; Defendant's Response ¶ 19. This is the sole fact in Trustee's Fact Statement that Defendant disputes.

[21] Trustee's Fact Statement ¶ 20 (citing to Doc. 13 at 3, Case No. 20-50365-RMM); Defendant's Response ¶ 20.

[22] Trustee's Fact Statement ¶ 21; Defendant's Response ¶ 21.

No interest in Wrights Mill was disclosed in the petition.[23] No transfer of Wrights Mill was disclosed in the petition.[24] Wilson was not listed as a creditor or named anywhere in the petition.[25] No lease or executory agreement was disclosed in the petition.[26]

On June 18, 2020, the Trustee examined Willman and O'Hara at the meeting under 11 U.S.C. § 341(a) and Willman and O'Hara testified under oath.[27] The Trustee made an audio recording of the 341 meeting which includes the following testimony by Willman and O'Hara:

### Audio recording time 0:00 to 0:14:

**Trustee:** This is the Willman and O'Hara case 20-50365. Mr. Willman and Ms. O'Hara, please raise your right hands. Do you swear that the testimony you will give today is the truth and nothing but the truth?

**Debtors:** Yes I do. Yes sir.

### Audio recording time 03:45 to 04:12:

**Trustee:** Did you all read and sign your petition, schedules and related documents that Mr. Boyer prepared?

**Debtors:** Yes sir.

**Trustee:** To the best of your knowledge, is the information in those documents correct?

**Debtors:** Yes.

---

[23] Trustee's Fact Statement ¶ 22 (citing to Doc. 13, Case No. 20-50365-RMM); Defendant's Response ¶ 22.

[24] Trustee's Fact Statement ¶ 23 (citing to Doc. 13, Case No. 20-50365-RMM); Defendant's Response ¶ 23.

[25] Trustee's Fact Statement ¶ 24 (citing to Doc. 13, Case No. 20-50365-RMM); Defendant's Response ¶ 24.

[26] Trustee's Fact Statement ¶ 25 (citing to Doc. 13, Case No. 20-50365-RMM); Defendant's Response ¶ 25.

[27] Trustee's Fact Statement ¶ 26 (citing to Doc. 13, Case No. 20-50365-RMM); Defendant's Response ¶ 26.

| | |
|---|---|
| **Trustee:** | Are you aware of any errors, omissions or changes? |
| **Debtors:** | No. |
| **Trustee:** | Are all assets and all debts identified? |
| **Debtors:** | Yes. |

### Audio recording time 08:10 to 08:17:

| | |
|---|---|
| **Trustee:** | Okay. Any property. All right. Tell me if you still have. Do you still have 99 Hidden Creek in Warner Robins? |
| **Debtors:** | No, that was a rental, a rented lot ... we paid lot rent there. |
| **Trustee:** | Okay. 104 Wisteria Point in Byron. More than 4 years ago? |
| **Debtors:** | Yes, more than 4 years ago. |
| **Trustee:** | Okay. 103 Wrights Mill Road. More than 4 years ago? |
| **Debtors:** | Yes. |

### Audio recording time 08:20 to 08:34:

| | |
|---|---|
| **Trustee:** | In the last 4 years—help me out now—so go back to February of 2016, the only property in your name is Highway 96 Jeffersonville property? |
| **Debtors:** | Correct. |

### Audio recording time 09:25 to 10:10:

| | |
|---|---|
| **Trustee:** | Have either of you inherited anything? And Ms. O'Hara you have, haven't you? |
| **Debtors:** | All I inherited was a $100 dollar bill. From my father. |
| **Trustee:** | Ok so got nothing out of the estate? |
| **Debtors:** | Yes, we settled lawsuit yes that was it. |

### Audio recording time 09:25 to 10:10:

| | |
|---|---|
| **Trustee:** | Have you transferred any assets to anyone in the last 4 years? |
| **Debtors:** | No.[28] |

---

[28] Trustee's Fact Statement ¶ 27; Defendant's Response ¶ 27.

The "Highway 96 Jeffersonville property" referred to in the Debtors' 341 testimony stated above is the Debtors' residence located at 1241 Georgia Highway 96 West, Jeffersonville, Twiggs County, Georgia and is the same property listed on Schedule A of the petition.[29]

On May 6, 2020, Townsend filed Adversary Proceeding Case No. 20-5013-JPS against Willman and O'Hara to determine dischargeability of the Probate Court judgment under 11 U.S.C. § 523(a)(4) and (6).[30]

On June 23, 2020, the Trustee filed a report of no distribution based on the Trustee's review of the petition, schedules, and statement of financial affairs and the Debtors' testimony at the 341 meeting which led the Trustee to believe there were no assets to be liquidated and the Debtors had not transferred any property within 4 years before the Petition Date.[31] On July 16, 2020, a chapter 7 discharge order was entered.[32] On July 16, 2020, the Clerk's Office mailed a copy of the discharge order to the Debtors.[33]

On August 5, 2020, Townsend filed a motion for summary judgment, statement of facts, and supporting brief in Adversary Proceeding Case No. 20-5013-JPS.[34] Under

---

[29] Trustee's Fact Statement ¶ 28 (citing to Doc. 13 at 3, Case No. 20-50365-RMM); Defendant's Response ¶ 28.

[30] Trustee's Fact Statement ¶ 29; Defendant's Response ¶ 29.

[31] Trustee's Fact Statement ¶ 30 (citing to the Trustee's Affidavit attached as Exhibit I to Trustee's Fact Statement); Defendant's Response ¶ 30.

[32] Trustee's Fact Statement ¶ 31 (citing to Doc. 35, Case No. 20-50365-RMM); Defendant's Response ¶ 31.

[33] Trustee's Fact Statement ¶ 32 (citing to Doc. 36, Case No. 20-50365-RMM); Defendant's Response ¶ 32.

[34] Trustee's Fact Statement ¶ 33 (citing to Docs. 15, 16, 17, Adv. Proc. No. 20-5013-JPS); Defendant's Response ¶ 33.

LBR 7056-1, a response to Townsend's motion for summary judgment in Adversary Proceeding Case No. 20-5013-JPS was due no later than August 26, 2020.[35]

On August 26, 2020, Willman and O'Hara filed a response to Townsend's motion for summary judgment in Adversary Proceeding Case No. 20-5013-JPS and a brief, response to statement of facts, and affidavits of Willman and O'Hara.[36]

On August 31, 2020, Willman recorded the Quitclaim Deed to Wilson dated November 27, 2018, in Houston County Deed Book 8744, page 91.[37]

On August 31, 2020, Wrights Mill was not subject to a security deed, debt or lien.[38] The PT-61 form recorded with the Quitclaim Deed to Wilson stated the "[a]ctual value of consideration received by seller" was $10.[39] No real estate transfer tax was paid to the Houston County Clerk's Office with the Quitclaim Deed to Wilson.[40]

On October 5, 2020, the Court entered a Memorandum Opinion and Order in Adversary Proceeding Case No. 20-5013-JPS which declared the debt owed by Willman and O'Hara to Townsend was non-dischargeable under 11 U.S.C. § 523(a)(6).[41] The Memorandum Opinion in Adversary Proceeding Case No. 20-5013-

---

[35] Trustee's Fact Statement ¶ 34; Defendant's Response ¶ 34.
[36] Trustee's Fact Statement ¶ 35 (citing to Doc. 20, Adv. Proc. No. 20-5013-JPS); Defendant's Response ¶ 35.
[37] Trustee's Fact Statement ¶ 36 (citing to Quitclaim Deed attached as Exhibit E to Trustee's Fact Statement); Defendant's Response ¶ 36.
[38] Trustee's Fact Statement ¶ 37; Defendant's Response ¶ 37.
[39] Trustee's Fact Statement ¶ 38; Defendant's Response ¶ 38. A copy of this PT-61 form is attached to the Trustee's Statement of Fact as Exhibit J.
[40] Trustee's Fact Statement ¶ 39 (citing to Quitclaim Deed attached as Exhibit E to Trustee's Fact Statement; Defendant's Response ¶ 39.
[41] Trustee's Fact Statement ¶ 40 (citing to Docs. 28, 29, Adv. Proc. No. 20-5013-JPS); Defendant's Response ¶ 40.

JPS stated Willman and O'Hara owed Townsend $125,940 for a judgment entered April 23, 2014, by the Court of Common Pleas Probate Division, Columbiana County, Ohio Court consisting of "$68,099 representing the net value of Smith & Wesson guns concealed by [Debtors]" and "$57,841...representing the net value of non-Smith & Wesson guns concealed by [Debtors]."[42]

On October 21, 2020, Townsend filed a "Petition by Creditor to Cancel Deed" against Willman and Wilson in Twiggs County Superior Court Case No. 2020-V-164 to set aside the transfer to Wilson under Georgia law.[43] On October 28, 2020, a Twiggs County Sheriff's Deputy personally served Willman and Wilson with Townsend's "Petition by Creditor to Cancel Deed" and a summons in Twiggs County Case No. 2020-V-164.[44] On May 5, 2021, Townsend filed a motion for summary judgment in Twiggs County Case No. 2020-V-164.[45]

Townsend's motion for summary judgment in Case No. 2020-V-164 stated as follows: "At the time he filed his Chapter 7 proceeding in 2020, Defendant Willman did not list his real property in Warner Robins on his bankruptcy petition and schedules. He also did not disclose any arrangement to sell the same property on his Statement of Financial Affairs filed with the U.S. Bankruptcy Court. Defendant

---

[42] Trustee's Fact Statement ¶ 41(citing to Doc. 28 at 5–6, Adv. Proc. No. 20-5013-JPS); Defendant's Response ¶ 41.

[43] Trustee's Fact Statement ¶ 42 (citing to copy of petition attached as Exhibit K to Trustee's Fact Statement); Defendant's Response ¶ 42. A copy of this petition is attached to the Trustee's Statement of Fact as Exhibit K.

[44] Trustee's Fact Statement ¶ 43 (citing to copy of Sheriff's Entry of Service attached as Exhibit L to Trustee's Fact Statement); Defendant's Response ¶ 43. A copy of the Sheriff's Entry of Service reflecting this service is attached to the Trustee's Statement of Fact as Exhibit L.

[45] Trustee's Fact Statement ¶ 44; Defendant's Response ¶ 44. A copy of this motion is attached to the Trustee's Statement of Fact as Exhibit M.

Willman should be judicially estopped from claiming any legitimate sale of his real property in Warner Robins, Georgia to his uncle, the co-defendant in this case."[46]

On June 7, 2021, Willman and Wilson filed (a) an objection and response to Townsend's summary judgment motion, (b) "Defendants' response to Plaintiff's Statement of Facts as to which there are no material issues to be tried" and (c) Wilson's affidavit in Twiggs County Case No. 2020-V-164.[47]

On June 7, 2021, the Debtors filed a motion in the Bankruptcy Court to reopen their chapter 7 case to "file amendments to their schedules and statement of financial affairs."[48] On June 7, 2021, the Debtors filed amended Schedule G for "Executory Contracts and Unexpired Leases" and listed Wilson.[49] On June 7, 2021, the Debtors filed amended Schedule B, Item 30 for "Other amounts someone owes you" and stated "See SOFA question no. 18."[50] On June 7, 2021, the Debtors filed an amended Statement of Financial Affairs which stated as follows: "In 2012, I agreed to sell the property to Michael Wilson and Bessie Willman. They agreed to pay $400/month and I, in turn, would pay the mortgage payment ($18,000 owed) of $376.00 plus property taxes and insurance. I agreed in 2012 to convey the property to them when the mortgage was paid in full. By November 2018, they had paid enough to satisfy the

---

[46] Trustee's Fact Statement ¶ 45 (citing to page 2 ¶ h of motion); Defendant's Response ¶ 45.

[47] Trustee's Fact Statement ¶ 46; Defendant's Response ¶ 46. Copies of these documents are attached as Exhibit N to Trustee's Fact Statement.

[48] Trustee's Fact Statement ¶ 47 (citing to Doc. 38, Case No. 20-50365-RMM); Defendant's Response ¶ 47.

[49] Trustee's Fact Statement ¶ 48 (citing to Doc. 40 at 8, Case No. 20-50365-RMM); Defendant's Response ¶ 48.

[50] Trustee's Fact Statement ¶ 49 (citing to Doc. 40 at 8, Case No. 20-50365-RMM); Defendant's Response ¶ 49.

mortgage, so in November 2018 I executed a deed in favor or [sic] Michael Wilson (Bessie Willman had passed away)."[51]

Neither Wilson nor Willman have any receipt, record, or other documentation that shows Wilson paid Willman or gave Willman property in exchange for transferring Wrights Mill to Wilson.[52]

On April 10, 2018, Willman paid $188.83 to the City of Warner Robins for 2017 property taxes owed for Wrights Mill.[53] On August 25, 2020, Willman paid $245.55 to the City of Warner Robins for 2018 property taxes owed for Wrights Mill.[54] On August 25, 2020, Willman paid $190.07 to the City of Warner Robins for 2019 property taxes owed for Wrights Mill.[55]

On November 3, 2021, Wilson paid $211.80 to the City of Warner Robins for 2020 property taxes owed for Wrights Mill.[56] On November 3, 2021, Wilson paid $211.80 to the City of Warner Robins for 2021 property taxes owed for Wrights Mill.[57] On November 1, 2022, Wilson paid $249.10 to the City of Warner Robins for 2022 property taxes owed for Wrights Mill.[58] On November 7, 2023, Wilson paid $276.25

---

[51] Trustee's Fact Statement ¶ 50 (citing to Doc. 40 at 12, Case No. 20-50365-RMM); Defendant's Response ¶ 50.
[52] Trustee's Fact Statement ¶ 51; Defendant's Response ¶ 51.
[53] Trustee's Fact Statement ¶ 52 (citing to copy of payment record attached as Exhibit O to Trustee's Fact Statement); Defendant's Response ¶ 52.
[54] Trustee's Fact Statement ¶ 53 (citing to copy of payment record attached as Exhibit P to Trustee's Fact Statement); Defendant's Response ¶ 53.
[55] Trustee's Fact Statement ¶ 54 (citing to copy of payment record attached as Exhibit Q to Trustee's Fact Statement); Defendant's Response ¶ 54.
[56] Trustee's Fact Statement ¶ 55 (citing to copy of payment record attached as Exhibit R to Trustee's Fact Statement); Defendant's Response ¶ 55.
[57] Trustee's Fact Statement ¶ 56 (citing to copy of payment record attached as Exhibit S to Trustee's Fact Statement); Defendant's Response ¶ 56.
[58] Trustee's Fact Statement ¶ 57 (citing to copy of payment record attached as Exhibit T to Trustee's Fact Statement); Defendant's Response ¶ 57.

to the City of Warner Robins for 2023 property taxes owed for Wrights Mill.[59] On March 20, 2018, Willman paid $430.12 to the Houston County Tax Commissioner for 2017 property taxes owed for Wrights Mill.[60] On December 17, 2018, O'Hara paid $401.45 to the Houston County Tax Commissioner for 2018 property taxes owed for Wrights Mill.[61] On February 24, 2020, Willman paid $406.87 to the Houston County Tax Commissioner for 2019 property taxes owed for Wrights Mill.[62] On December 1, 2020, Willman paid $401.45 to the Houston County Tax Commissioner for 2020 property taxes owed for Wrights Mill.[63] On August 30, 2021, Wilson paid $526.17 to the Houston County Tax Commissioner for 2021 property taxes for Wrights Mill.[64] On September 14, 2022, Wilson paid $573.91 to the Houston County Tax Commissioner for 2022 property taxes for Wrights Mill.[65] On November 7, 2023, Wilson paid $629.56 to the Houston County Tax Commissioner for 2023 property taxes for Wrights Mill.[66]

---

[59] Trustee's Fact Statement ¶ 58 (citing to copy of payment record attached as Exhibit U to Trustee's Fact Statement); Defendant's Response ¶ 58.

[60] Trustee's Fact Statement ¶ 59 (citing to copy of tax payment receipt attached as Exhibit V to Trustee's Fact Statement); Defendant's Response ¶ 59.

[61] Trustee's Fact Statement ¶ 60 (citing to copy of tax payment receipt attached as Exhibit W to Trustee's Fact Statement); Defendant's Response ¶ 60.

[62] Trustee's Fact Statement ¶ 61 (citing to copy of tax payment receipt attached as Exhibit X to Trustee's Fact Statement); Defendant's Response ¶ 61.

[63] Trustee's Fact Statement ¶ 62 (citing to copy of tax payment receipt attached as Exhibit Y to Trustee's Fact Statement); Defendant's Response ¶ 62.

[64] Trustee's Fact Statement ¶ 63 (citing to copy of tax payment receipt attached as Exhibit Z to Trustee's Fact Statement); Defendant's Response ¶ 63.

[65] Trustee's Fact Statement ¶ 64 (citing to copy of tax payment receipt attached as Exhibit AA to Trustee's Fact Statement); Defendant's Response ¶ 64.

[66] Trustee's Fact Statement ¶ 65 (citing to copy of tax payment receipt attached as Exhibit BB to Trustee's Fact Statement); Defendant's Response ¶ 65.

### B.    Affidavits of Defendant and Willman

The Defendant's evidence in opposition to the Motion for Summary Judgment comprises two affidavits: his own affidavit [Doc. 54] and the affidavit of Willman [Doc. 55]. The affidavits largely overlap and provide testimony, consistent with one another, regarding an agreement reached in 2012 for the Defendant to purchase Wrights Mill from Willman. The below facts are from the affidavits submitted by the Defendant.

Dorothy P. Moore was Willman's mother-in-law. She died on May 19, 2012, and left the property to Willman. The house had significant deferred maintenance at the time. Wilson and Bessie Willman—Wilson's sister and Willman's mother ("B. Willman")—asked Willman if they could buy the house. Willman agreed to sell it to them. Wilson Aff. ¶ 2; Willman Aff. ¶ 2.

Willman had another residence where he lived and did not need the house. Willman Aff. ¶ 2.

At the time of Ms. Moore's death, approximately $18,000 remained owing on a mortgage against the house. The mortgage payments were $376 per month. The deal reached was: Wilson and Bessie Willman would pay $400 per month to Willman; Willman would pay the mortgage, homeowners' insurance, and property taxes; and Willman would convey the property when the mortgage was paid off. Wilson Aff. ¶ 3; Willman Aff. ¶ 6.

16

Wilson and Bessie Willman moved into the house on or about June 3, 2012. Wilson Aff. ¶ 4; Willman Aff. ¶ 7. Wilson has occupied it ever since. Wilson Aff. ¶ 4. Mr. Willman never occupied the house. Willman Aff. ¶ 7.

Wilson and Bessie Willman paid $400 per month to Willman from June 2012 until the fall of 2018. Wilson Aff. ¶ 4; Willman Aff. ¶ 7. The $400 per month was paid in cash and Willman, in turn, paid the $376 mortgage payments in cash through a service at Kroger. Willman Aff. ¶ 5. Wilson spent an estimated $20,000 in repairs on the house for replacing the roof, extending the porch, and adding new flooring in the kitchen and living room, among other repairs. Wilson Aff. ¶ 4; Willman Aff. ¶ 4.

On or about November 27, 2018, Mr. Willman had a deed prepared to convey the property to Wilson because, by then, the mortgage had been paid off. Wilson Aff. ¶ 4; Willman Aff. ¶ 7. Bessie Willman had died by that time, so only Wilson was on the deed. Willman Aff. ¶ 7. The deed was executed in the offices of attorney Charles Bond. He was supposed to record it in 2018, but did not do so until 2020. Willman Aff. ¶ 7.

When Willman inherited the property in 2012, the property's value was no more than $18,000, which was the amount of the outstanding mortgage, and the house was in bad shape due to deferred maintenance. Willman Aff. ¶ 4. According to the Houston County Tax Assessor, the value of the property was $43,200.00 in 2020. Willman Aff. ¶ 3. Between the repairs and the mortgage, Wilson and Bessie Willman had paid $38,000 by the fall of 2018. Wilson Aff. ¶ 4; Willman Aff. ¶ 4. The money

paid by them was equal to the value of the property in 2018 when the deed was signed and in 2020 when the deed was recorded. Willman Aff. ¶ 4.

Wilson did not know anything about the judgment against Willman. He relied in good faith on Mr. Willman's agreement to convey the house to him. Wilson Aff. ¶ 5. Willman's intent in making the transfer was to honor his agreement with Wilson, and not to hinder, delay, or defraud any creditor. Willman Aff. ¶ 8. Willman did not list the home in his 2020 bankruptcy because he considered it conveyed in 2012 and finalized in 2018. Willman Aff. ¶ 10. Willman handled the sale transaction more informally than he would have, but this was his mother and uncle, and they trusted him to convey the property as agreed. Willman Aff. ¶ 11.

## IV.   Analysis

### A.   Actual Intent to Hinder, Delay, or Defraud

#### 1.   Elements

The Trustee seeks summary judgment on his claim to avoid the transfer as having been made with intent to hinder, delay, or defraud creditors. The Trustee asserts this claim under 11 U.S.C. § 548(a)(1)(A) as well as 11 U.S.C. § 544(b) and O.C.G.A. § 18-2-74(a).[67]

To establish a claim "under § 548(a)(1)(A), the Trustee has the burden to prove the following elements by a preponderance of the evidence: (1) a transfer, (2) of an interest of the debtor in property, (3) within two years of the petition date, and (4)

---

[67] "Section 544(b) of the Bankruptcy Code permits a trustee to avoid a transfer that is voidable under applicable law by a creditor holding an unsecured claim, thus making O.C.G.A. § 18-2-74(a) applicable." *Perkins v. Crown Fin., LLC (In re Int'l Mgmt. Assocs., LLC)*, Adv. Proc. No. 06-6421-PWB, 2016 WL 552491, at *5 (Bankr. N.D. Ga. Feb. 10, 2016) (Bonapfel, J.).

made by the debtor with actual intent to hinder, delay, or defraud any current or future creditor of the debtor." *Wallace v. McFarland (In re McFarland)*, Adv. Proc. No. 11-01021, 2013 WL 5442406, at *5 (Bankr. S.D. Ga. Sept. 30, 2013) (Barrett, C.J.).

Aside from the two-year limitations period, the same elements apply to a claim under O.C.G.A. §§ 18-2-74(a)(1). *See, e.g.*, *Flatau v. Barry Switzer Family, LLC (In re Donnan)*, Adv. Proc. No. 13-3002, 2016 WL 1085499, at *4 (Bankr. M.D. Ga. Mar. 17, 2016) (Smith, J.) ("[T]he standards for recovery under and the standards for defenses to the Bankruptcy Code and state law avoidance statutes are the same."); *In re McFarland*, 2013 WL 5442406, at *5 (noting "the Georgia fraudulent transfer statute, O.C.G.A. § 18-2-74, is virtually identical to § 548 of the Bankruptcy Code").

The Trustee bears the burden of proof under 11 U.S.C. § 548(a)(1)(A) as well as 11 U.S.C. § 544(b) and O.C.G.A. § 18-2-74(a). *See, e.g.*, *Trauner v. Delta Air Lines, Inc. (In re Think Retail Sols., LLC)*, Adv. Proc. No. 17-5078-BEM, 2019 WL 2912717, at *4 (Bankr. N.D. Ga. July 5, 2019) (Ellis-Monro, J.) ("With respect to Plaintiff's Motion, Plaintiff has the burden of proof at trial to establish each of the elements of his claims by a preponderance of the evidence under either §§ 544 or 548(a).") (citing *Howell v. Fulford (In re S. Home and Ranch Supply, Inc.)*, 515 B.R. 699, 704 (Bankr. N.D. Ga. 2014) (Drake, J.)).

### 2.    Intent & Badges of Fraud

"Absent a debtor admitting to the requisite intent, intent can only be proved inferentially by looking at the circumstances under which a transfer was made."

19

*Kelley v. Speciale (In re Gregg)*, Adv. Proc. No. 11-4047, 2013 WL 3989061, at \*10 (Bankr. M.D. Ga. July 2, 2013) (Laney, C.J.). Proving a transferor's intent is typically accomplished through evidence of "badges of fraud," which are "circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them." *Gordon v. Davis (In re In Cha Rim)*, Adv. Proc. No. 18-05236-LRC, 2019 WL 1150034, at \*2 (Bankr. N.D. Ga. Mar. 8, 2019) (Ritchey Craig, J.) (quoting *Schilling v. Heavrin (In re Triple S Restaurants, Inc.)*, 422 F.3d 405, 414 (6th Cir. 2005)).

Badges of fraud are identified by statute in Georgia's Uniform Voidable Transactions Act, O.C.G.A. §§ 18-2-70 to -85. *See* O.C.G.A. § 18-2-74(b) (nonexclusive list of 11 factors courts may consider "[i]n determining actual intent under" § 18-2-74(a)(1)). While badges of fraud are not similarly codified in the Bankruptcy Code, the badge-of-fraud analysis is the same under § 548(a)(1) as it is under Georgia law. *See, e.g.*, *XYZ Options, Inc. v. Keating (In re XYZ Options, Inc.)*, 154 F.3d 1262, 1272 & n.18 (11th Cir. 1998) (identifying 11 factors "courts should look to" when "determining whether the circumstantial evidence supports an inference of fraudulent intent" and noting "the appropriate analysis of actual fraudulent intent under § 548(a) would look to the badges of fraud").

The "badges of fraud include whether: (1) The transfer was to an insider; (2) The debtor retained possession or control of the property transferred after the transfer; (3) The transfer was disclosed or concealed; (4) Before the transfer was made the debtor had been sued or threatened with suit; (5) The transfer was of substantially all the debtor's assets; (6) The debtor absconded; (7) The debtor removed

or concealed assets; (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (9) The debtor was insolvent or became insolvent shortly after the transfer was made; (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." *Pettie v. Bonertz (In re LendXFinancial, LLC)*, Adv. Proc. No. 11-05330-MGD, 2012 WL 1597394, at *5 (Bankr. N.D. Ga. Mar. 19, 2012) (Deihl, J.) (citing *In re XYZ Options*, 154 F.3d at 1272; O.C.G.A. § 18-2-74(b)).

### 3.    Analysis

As to the transfer at issue in this case, the Trustee asserts that "multiple badges of fraud establish an unmistakable intent to hinder, delay and/or defraud." Trustee's Brief at 2. Specifically, the Trustee points to nine purportedly undisputed facts amounting to badges of fraud: (1) the transfer was to an insider, *i.e.*, Willman's uncle; (2) the transfer was concealed, and the timeline of key events suggests intentional concealment; (3) Willman had been sued before the transfer; (4) Willman's amended Statement of Financial Affairs appears fabricated; (5) Willman received less than equivalent value for Wrights Mill[68]; (6) Willman was insolvent when the transfer was made; (7) Willman transferred all the real estate he owned to Wilson; (8) Willman had a prior history of concealing assets; and (9) Willman and O'Hara

---

[68] The Trustee asserts Willman received less than $100 for the transfer, reasoning as follows: "The *Quitclaim Deed* shows no real estate transfer tax was paid. Where no transfer tax is paid, either the consideration received in exchange for the transfer was less than $100 or the deed was otherwise exempt from true. ... Since there does not appear to be a transfer tax exemption for the deed to Wilson, Willman received less than $100 for the transfer." Trustee's Brief at 9.

continued paying property taxes for Wrights Mill through December 2020. *See* Trustee's Brief at 3–13.[69]

After noting courts may infer fraudulent intent from the totality of the circumstances, including badges of fraud, the Trustee concludes, "In the instant case, the facts established by the record are more than enough to infer Willman made the transfer to Wilson for the singular purpose of hindering, delaying and/or defrauding Townsend." Trustee's Brief at 15.

The Court agrees that the undisputed facts clearly support an inference that Willman transferred Wrights Mill with the intent to hinder, delay, or defraud Townsend. The undisputed facts, however, do not *compel* that conclusion. Willman has denied a nefarious intent by affidavit, and Wilson has presented facts—supported by both his and Willman's affidavit—supporting an alternative, innocent explanation for the transfer and the delay in recording the Quitclaim Deed.

"As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." *U.S. v. F.E.B. Corp.*, 52 F.4th 916, 927 (11th Cir. 2022) (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991)). Where a debtor's intent in making a

---

[69] Although labeled "badges of fraud," several items in this list—such as the Debtors' statement of financial affairs and continued payment of property taxes—refer to case-specific circumstances and are not among the 11 commonly occurring circumstances recognized as "badges of fraud." The Court, however, will give every relevant factor its due consideration. "[T]he traditional badges of fraud are not the sole indicators of actual fraudulent intent. The traditional badges of fraud represent examples of indicators of actual fraudulent intent, culled from decades of case law. They are intended to be guideposts—as opposed to ineluctable factors—in a court's analysis of the totality of the circumstances to determine whether a transfer was made with actual fraudulent intent." *Furr v. TD Bank, N.A. (In re Rollaguard Sec., LLC)*, 591 B.R. 895, 918 (Bankr. S.D. Fla. 2018).

transfer is disputed, the cases are legion and uniform that a plaintiff cannot obtain summary judgment on claims asserting intent to hinder, delay, or defraud. *See, e.g.*, *Ojemeni v. Ojemeni (In re Ojemeni)*, Adv. Proc. No. 07-06412, 2008 WL 7870966, at *2 (Bankr. N.D. Ga. June 13, 2008) (Bihary, J.) ("Defendant, however, denies any actual intent to defraud, and argues that the transfers were made in consideration for defendant's continued support and payment of the living expenses of the debtor. There is a genuine dispute as to debtor's intent and summary judgment on plaintiff's § 548(a)(1)(A) claim cannot be granted."); *Trauner v. Delta Air Lines, Inc. (In re Think Retail Sols., LLC)*, Adv. Proc. No. 17-5078-BEM, 2019 WL 2912717, at *15 (Bankr. N.D. Ga. July 5, 2019) (Ellis-Monro, J.) ("Furthermore, in the face of Simpson's affidavit statements as to intent and the general reluctance to determine intent on summary judgment, the Court cannot conclude as a matter of law whether or not the transfers by Simpson using the Simpson Debit Card, the AmEx Card, or the BOA Card were made with the requisite intent.") (citation omitted) (citing *Kapila v. Espirito Santo Bank (In re Bankest Cap. Corp.)*, 374 B.R. 333, 346 (Bankr. S.D. Fla. 2007)); *Howell v. Fulford (In re S. Home & Ranch Supply, Inc.)*, 515 B.R. 699, 705 (Bankr. N.D. Ga. 2014) (Drake, J.) ("Rather, the 'badges merely highlight circumstances that suggest that a transfer was made with fraudulent intent,' and whether such is the case 'is a heavily fact-dependent question' that is rarely amenable to summary judgment.") (quoting *Andrews v. RBL, L.L.C. (In re Vista Bella, Inc.)*, No. 11-00149-MAM-7, 2013 WL 2422703, at *15 (Bankr. S.D. Ala. June 4, 2013) (Mahoney, J.)).

The case *Pettie v. Bonertz (In re LendXFinancial, LLC)*, Adv. Proc. No. 11-05330-MGD, 2012 WL 1597394 (Bankr. N.D. Ga. Mar. 19, 2012) (Deihl, J.), is one of innumerable cases illustrating the point that a dispute over intent will prevent summary judgment despite the presence of numerous badges of fraud. There, the defendant (Bonertz) was an individual who owned the debtor and an entity named AME Financial. In May 2009, the debtor executed a quitclaim deed to real property in favor of Bonertz. The quitclaim deed was not recorded at that time, and in fact, the property remained on the debtor's balance sheet through November 30, 2009. *Id.* at *1.

The quitclaim deed was not recorded until December 14, 2009—twelve days after the debtor was served with a notice of hearing on a motion to add the debtor to a lawsuit to it liable for a $4,575,000 judgment against AME. And a mere nine days later, on December 23, the debtor was indeed added to the lawsuit and held liable through an amended judgment. This was done on a finding Bonertz had created the debtor in a fraudulent effort to avoid the AME judgment. *Id.* at *1–2.

The debtor filed bankruptcy less than 6 months later, on June 7, 2020. *Id.* at *3. The trustee of the debtor's bankruptcy estate sued to avoid the transfer to Bonertz under (among other statutes) § 548(a)(1)(A) as well as 11 U.S.C. § 544 and O.C.G.A. § 18-2-74(a)(1). *Id.* The trustee then sought summary judgment on these claims, relying numerous badges of fraud: the transfer was to an insider; the debtor had been threatened with suit just before the transfer was made, in that it occurred shortly after the debtor was notified that a plaintiff sought to hold it liable for the AME

judgment; the debtor transferred its only hard asset; the transfer was for nominal or

no consideration; and the debtor became insolvent the month after the transfer. And

as additional circumstantial evidence of intent, the trustee pointed to the finding that

the debtor was created in a fraudulent effort to avoid the AME judgment. *Id.* at *6.

Bonertz countered all of the above circumstantial evidence of fraudulent intent

with (1) an affidavit stating the transfer was pursuant to an oral agreement to convey

and (2) an affidavit stating the delay in recording the quitclaim deed was attributable

to mere inadvertence, and not to the impending liability for the AME judgment. *Id.*

at *7. These affidavits, the Court concluded, demonstrated a dispute over issues of

intent, precluding summary judgment in favor of the trustee:

> Viewing the evidence in the light most favorable to Defendant, a
> genuine issue of material fact exists over Debtor's intent to hinder,
> delay, or defraud creditors. Defendant has offered circumstantial
> evidence that could lead a reasonable jury to find that Debtor did not
> have the requisite intent. On a motion for summary judgment, the Court
> is not to weigh the evidence for and against a fact. Because Plaintiff and
> Defendant each include circumstantial evidence in the record in support
> of their conflicting statements of fact about Debtor's intent, summary
> judgment is inappropriate on Plaintiff's actual fraud claim under §
> 548(a)(1)(A).
> ...
> O.C.G.A. § 18-2-74(a)(1) substantially mirrors § 548(a)(1)(A) of
> the Bankruptcy Code. ... Because the analysis is the same as under
> U.S.C. § 548(a)(1)(A), the Court incorporates its analysis from above.
> Based on the conflicting evidence presented to the Court, a reasonable
> jury could find that Debtor lacked the requisite intent. This dispute over
> a material fact demands the same conclusion as above, and Plaintiff is
> therefore not entitled to summary judgment on his claim under O.C.G.A.
> § 18-2-74(a)(1).

*Id.* at *7.

Similarly here, in the face of a number of badges of fraud, Defendant has offered affidavits disputing fraudulent intent and presenting a more innocent explanation for the transfer of Wrights Mill (*i.e.*, it was pursuant to an oral agreement dating back to 2012) and the delay in recording the Quitclaim Deed (i.e., an attorney was supposed to record it after execution, but waited until 2020). Similarly here, this evidence could lead a reasonable jury to find that Willman did not have the requisite intent. This presents a genuine issue of material fact over Willman's intent in transferring Wrights Mill to the Defendant. As such, summary judgment is inappropriate, and the Court denies the Motion as to the Trustee's claims under 11 U.S.C. § 548(a)(1)(A) as well as 11 U.S.C. § 544(b) and O.C.G.A. § 18-2-74(a).

### B.    Unauthorized Post-petition Transfer of Estate Property

#### 1.    Elements & Defenses

Section 549(a) of the Bankruptcy Code authorizes a trustee to avoid unauthorized post-petition transfers of estate property. *See* 11 U.S.C. § 549(a) ("[T]he trustee may avoid a transfer of property of the estate … that occurs after the commencement of this case; and ... that is not authorized under this title or by the court."). "The essential elements of a cause of action under section 549 are (1) there has been a transfer of property, (2) the property was property of the estate, (3) the transfer occurred after the commencement of the case and (4) the transfer was not authorized under the Code or by the bankruptcy court." 10 COLLIER ON BANKRUPTCY ¶ 6001.01[2] (16th 2024). *See also, e.g.*, *Marathon Petroleum Co., LLC v. Cohen (In re Delco Oil, Inc.)*, 599 F.3d 1255, 1262 (11th Cir. 2010) (stating the elements as "(1) a

post-petition transfer (2) of estate property (3) which was not authorized by the
Bankruptcy Code or the court.").

A defendant who asserts the validity of a post-petition transfer has the burden
of proof on that issue. *See* Fed. R. Bankr. P. 6001[70]; 10 COLLIER ON BANKRUPTCY ¶
6001.01[3] (16th 2024) ("[O]nce the plaintiff has established the first three elements
listed above, then the burden shifts to the defendant to establish the nonexistence of
the fourth element, essentially as a defense.") (footnote omitted); *Gonzales v. SXTX
Invests., LLC (In re Fresh Acquisitions, LLC)*, Adv. Proc. No. 23-03000-SGJ, 2023 WL
4921234, at *6 (Bankr. N.D. Tex. Aug. 1, 2023) (Jernigan, J.) ("If a trustee makes his
*prima facie* case under section 549, a defendant then bears the burden of proving the
authority for (or validity of) the transfers. In essence, there are two questions for this
court to consider: (i) whether the two challenged transfers were in fact post-petition
transfers of property of the estate, and (ii) if so, did the Bankruptcy Code or this court
nonetheless authorize them.").

The defendant likewise bears the burden of proof as to the affirmative defenses
set forth in § 549(b) and § 549(c). *See, e.g.,* 10 COLLIER ON BANKRUPTCY ¶ 6001.01[4]
(16th 2024) ("Code sections 549(b) and 549(c) contain affirmative defenses available
to defendants who receive post-petition transfers in certain specified situations[.] …

---

[70] When this adversary proceeding was filed, Bankruptcy Rule 6001 read, "Any entity asserting the
validity of a transfer under § 549 of the Code shall have the burden of proof." Effective December 1,
2024, the rule was amended nonsubstantively to read, "An entity that asserts the validity of a post-
petition transfer under § 549 has the burden of proof."

Because those defenses are affirmative defenses, defendants seeking to assert them appropriately bear the burden of proof, without regard to Bankruptcy Rule 6001.").

Relevant here is the defense available to certain bona fide purchasers of real property, set forth in § 549(c):

> The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser.

11 U.S.C. § 549(c). "Section 549(c) protects certain good faith purchasers of interests in real property. Its purpose is to protect against a fraudulent or ill-informed debtor selling real property, or its interest therein, for present fair equivalent value to an innocent purchaser who has no knowledge, or reasonable means of knowledge, of the pendency of the bankruptcy case, and whose interest was perfected before a copy or notice of the petition was recorded. 5 COLLIER ON BANKRUPTCY ¶ 549.06 (16th 2024) (footnotes omitted). "In other words, Section 549(c) 'creates a three-part test: (1) was the transferee a "good faith purchaser without knowledge of the commencement of the case"; (2) did the transferee pay "present fair equivalent value"; and (3) was the transferee's interest perfected before a copy or notice of the bankruptcy petition was recorded, such that a bona fide purchaser under state law could not have acquired a superior interest.'" *Welt v. Rafiee (In re Zargaran)*, 216 F. Supp. 3d 1340, 1344 (S.D.

Fla. 2016) (Gayles, J.) (quoting *Morton v. Kievit (In re Vallecito Gas, LLC)*, 461 B.R.

358, 402 (Bankr. N.D. Tex. 2011)).

### 2.    Parties' Contentions

The Trustee asserts he is entitled to summary judgment on his claim under §

549 as follows:

> Willman signed the deed conveying Wrights Mill to Wilson on
> November 27, 2018. However, the deed was not recorded until post-
> petition on August 31, 2020. On the petition date, Willman was the
> record title owner of a fee simple interest in Wrights Mill. Because of
> that, Wrights Mill was property of the bankruptcy estate under 11
> U.S.C. § 541. The docket shows no order was entered by the Court to
> allow the transfer. Nor did any provision of the Bankruptcy Court
> authorize it. The transfer is avoidable because recording the deed
> transferred property of the estate to Wilson post-petition.

Trustee's Brief at 13.

The Trustee further asserts Wilson is not protected by § 549(c) because—

accepting Wilson's account as true, *i.e.*, the transfer was made on account of payments

made in 2018—then "the transfer was made on account of the prior payments" and

thus "Wilson did not give 'present fair equivalent value.'" Trustee's Brief at 14.

Defendant asserts that Wrights Mill was never property of the estate because

he and Willman agreed to the conveyance as far back as 2012, Defendant took

possession in 2012 and remained in possession through the Petition Date, and

Defendant paid the full purchase price for the property. Defendant's Response at 4–

5, 9. Defendant further asserts he is entitled to the § 549(c) defense, arguing as

follows: "[Defendant] testified he had no knowledge of the bankruptcy case, Kelly

Townsend's claim, or Kelly Townsend's judgment, until he was sued in this case by

Plaintiff. 11 U.S.C. § 549(c) protects good faith purchase of real property post-petition without notice. To avoid this result, Plaintiff must file notice in the real estate records of his claims. Plaintiff did not do so here. Defendant testified he knew nothing of the bankruptcy of Kelly Townsend's claim until he was sued in this case." Defendant's Response at 9–10.

As further explained below, the Court concludes that genuine issues of material fact exist as to whether and to what extent Willman had an interest in Wrights Mill on the Petition Date, and thus genuine issues of material fact exist as to whether and to what extent the post-petition recording of the Quitclaim Deed constituted a transfer of estate property.

### 3.    Property of the Estate

Property of the estate broadly includes (with certain exceptions not relevant here) "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Regarding property to which the debtor holds bare legal title, however, § 541(d) limits the scope of § 541(a)(1): "Property in which the debtor holds … only legal title and not an equitable interest … becomes property of the estate … only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. 541(d). *See also, e.g.*, 5 COLLIER ON BANKRUPTCY ¶ 541.28 (16th 2024) ("Section 541(d) clarifies section 541(a)(1) by expressly providing that any such interest held by the debtor at the commencement of the case becomes estate property under subsection (a)(1) or (2) but only to the extent of the debtor's

legal title to the property, not including any equitable interest in the property not held by the debtor.").

"Even though bankruptcy is federal law, 'property interests are created and defined by state law.' That means 'the nature and existence of the debtor's right to property is determined by looking to state law.'" *TitleMax of Alabama, Inc. v. Hambright*, 658 B.R. 688, 695 (N.D. Ala. 2024) (citation omitted) (quoting *Title Max v. Northington (In re Northington)*, 876 F.3d 1302, 1310 (11th Cir. 2017)). *See also, e.g.*, *Shubert v. Murray (In re Shubert*, 525 B.R. 536, 538 (Bankr. M.D. Ga. 2015) (Carter, J.) ("It is well established that the debtor's interests in property are, absent federal law to the contrary, defined by applicable state property law.").

Here, then, whether and to what extent Wrights Mill was estate property hinges on the nature of Willman's interest in Wrights Mill as of the Petition Date. Defendant and Willman have asserted, via affidavits, the following. Dorothy Moore died on May 19, 2012, and left Wrights Mill to Willman. Willman had another residence and did not need Wrights Mill. Willman agreed in 2012 to sell Wrights Mill to Defendant in a transaction whereby Defendant would pay Willman $400 per month. Willman would pay the $376 per month mortgage payments (as well as homeowners' insurance and property taxes), and Willman would convey the property when the mortgage was paid off. Defendant moved into Wrights Mill in June 2012 and has occupied it ever since. Defendant paid $400 per month to Willman from June 2012 until the fall of 2018. On or around November 27, 2018, Willman had a deed

prepared to convey Wrights Mill to Defendant because, by then, the mortgage had been paid off.

The transaction described in the affidavits is substantively one of an installment land sale contract. Under Georgia law, such contracts (sometimes referred to as bonds for title) contemplate a sale of real estate where the purchaser takes possession of the property, the purchase price is paid in installments, and the seller holds title until the purchase price is paid. *See, e.g.*, *MSE Sub I LLC v. Louis (In re Louis)*, No. 20-62841-JWC, 2020 WL 2843013, at *3–4 (Bankr. N.D. Ga. May 29, 2020) (Cavender, J.) ("[A] number of cases under Georgia law deal[] with bonds for title and similar agreements through which a seller of real property finances the purchase price by retaining title to the subject property while the purchaser takes possession and makes payments on the purchase price. Sometimes called bonds for title, sometimes called installment contracts, sometimes not having any specific name, courts in Georgia generally treat these agreements similarly in terms of the purchaser's rights and how the seller may extinguish the purchaser's rights.") (citing *Crowell v. Williams*, 273 Ga. App. 676, 676–77 (2005)); *In re Dry Creek Farms, LLC*, No. 09-43118-PWB, 2011 WL 9210473, at *4 (Bankr. N.D. Ga. Aug. 30, 2011) (Bonapfel, J.) ("Georgia courts have observed that the rights of the parties under an installment land sale contract are substantively equivalent to those under a bond for title.").

Under Georgia law, in a transaction such as this, the purchaser acquires an equitable interest in the property to the extent of payments and improvements made,

and the seller's rights are functionally equivalent to the rights of a holder of a security deed. *See, e.g.*, *Lytle v. Scot. Am. Mortg. Co.*, 122 Ga. 458, 50 S.E. 402, 406 (1905) ("[W]here the vendee has entered and made improvements, or where he has paid a part of the purchase money, he has acquired an interest in the land. This interest is property. … In the sale of land on credit, where the vendor retains title, he has not the absolute estate, but is a trustee holding the title only as security."); *S. Land & Cattle Co. v. Simmons*, 202 Ga. App. 734, 735, 415 S.E.2d 329, 330 (1992) ("We agree with the trial court that this installment contract was akin to the now largely abandoned bond for title in that it served as a contract for the sale and purchase of land; initially conveyed possession to the purchaser while legal title remained in the seller; and acted as a security instrument in the manner of a security deed while the payments were being made.") (citations omitted); *In re Dry Creek Farms*, 2011 WL 9210473, at *4 (under Georgia law, "the seller under an installment land sale contract … has the same substantive rights as the holder of a deed to secure debt: the right to collect the amount due or subject the property to the payment of that amount").

Additionally, under Georgia law, a purchaser of real property who enters into actual possession *and* pays the full purchase price obtains a "perfect equity" that is the equivalent of legal title—regardless of whether the seller executes a formal deed conveying legal title. *See, e.g.*, *Jackson v. Faver*, 210 Ga. 58, 59 (1953) ("Where a vendee of land enters into actual possession and pays the entire purchase price, he thereby acquires a perfect equity which is the equivalent of legal title, and upon the strength thereof can successfully defend in ejectment against the vendor, or any one

33

claiming under him, and may assert title under a claim to property attempted to be sold under judicial process, although no formal deed conveying the legal title was ever executed."); *Pirkle v. Turner*, 281 Ga. 846, 847 n.1 (2007) ("[W]here a vendee makes a contract for the purchase of land, pays all the purchase money, goes into actual possession, and nothing remains to be done by him to comply with the contract, he thereby acquires a perfect equity which is the equivalent of whatever legal title the vendor had, even in the absence of a deed.") (quoting *Drillers Serv., Inc. v. Moody*, 242 Ga. 123, 124 (1978)); *Strickland v. Jenkins*, 198 Ga. 15, 17–18 (1944) ("Where the petition further alleged that the plaintiff's deceased husband purchased the land from the owner, paid him the purchase money therefor, and entered into possession of the land, a perfect equity was shown. Such title is the equivalent of a deed from the vendor. Since the facts above enumerated constitute a perfect equity, and the equivalent of legal title, such facts will support an action of ejectment by the purchaser, or one who stands in his shoes.") (citations omitted).

Viewed in the light most favorable to the Defendant, the nonmoving party, the evidence shows that Willman acquired ownership of Wrights Mill by virtue of his mother-in-law's death in May 2012 and a subsequent Executor's Deed; that around June 2012, Willman and Defendant entered into what amounts to an oral installment land sale contract to sell Wrights Mill to Defendant for a purchase price equal to the amount owing on the mortgage against Wrights Mill (or approximately $18,000), to be paid through monthly payments of $400 until the mortgage was paid off; that Defendant moved into Wrights Mill on or about June 3, 2012, and has occupied it ever

since; that the Defendant paid as agreed; and that by the fall of November 2018, the mortgage had been paid off.

With the evidence construed in Defendant's favor, the interests in Wrights Mill would be as follows: (1) from June 2012 through approximately the fall of 2018, Willman's interest in Wrights Mill was substantively no different than if he had deeded Wrights Mill to Defendant and accepted a security deed in return; (2) by the fall of 2018, the Defendant had made the last payment to Willman for the purchase of Wrights Mill, thereby acquiring a perfect equity equivalent to legal title; and (3) as of the Petition Date, Willman was merely a bare record title owner as to Wrights Mill, with no equitable or legal interest in Wrights Mill that could have entered the estate.

Genuine issues of material fact exist as to whether and to what extent Willman owned Wrights Mill on the Petition Date and thus whether and to what extent recording the Quitclaim Deed constituted a transfer of estate property. As such, the Court denies the Motion as to the Trustee's claim to avoid the transfer under § 549(a) as an unauthorized post-petition transfer of estate property.

### C.    Preference

The Trustee has the burden of proving a preferential transfer occurred under § 547(b) whereas the defendant has the burden of establishing any affirmative defense. *See, e.g.*, *Nordberg v. ARAB Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 595 n.15 (11th Cir. 1990) ("It should be noted that while the trustee-plaintiff bears the burden of proving the elements of avoidability under § 547(b), the

creditor-transferee bears the burden of establishing any of the affirmative defenses under § 547(c).").

The Trustee contends that under the Defendant's and Willman's "version of the facts"—which "the Trustee does not accept the truthfulness of"—the transfer of Wrights Mill is avoidable under § 547(b) as a preference. Trustee's Brief at 14 & n.12. Under their version of the facts, per the Trustee, "the transfer of Wrights Mill was a transfer of Willman's interest in property a) to Wilson as a creditor, b) for an antecedent obligation, c) made while Willman was insolvent, d) made within 90 days of the petition date and e) which enabled Wilson to receive more than he would have in the case if the transfer had not been made." Trustee's Brief at 14. *See also* Trustee's Brief at 16 ("Wilson's affidavit filed in Twiggs County Superior Court and the Debtors' amended *Statement of Financial Affairs* claim Willman agreed to sell Wrights Mill to Wilson in 20 12 and that Wilson made payments to Willman from 2012 - 2018. **If true**, the transfer is avoidable under 11 U.S.C.§ 547(b) ….") (emphasis added).

The Trustee's burden here is to demonstrate that the *undisputed* material facts show *entitlement* to judgment as a matter of law. The Trustee's arguments as to his preference claim, however, rely on highly disputed facts—facts the Trustee himself disputes—and amount to an in-the-alternative basis for avoidance. The Trustee's arguments on this point, while perhaps appropriate at a trial on the merits of Trustee's avoidance claims, are not well taken in a motion for summary judgment. As such, the Court denies the Motion as to the Trustee's claim under § 547(b) to avoid the transfer of Wrights Mill as a preference.

## V.    Conclusion

For all the foregoing reasons, the Court denies the Trustee's Motion for Summary Judgment. The Court will enter an order consistent with this opinion.

**END OF DOCUMENT**